Opinion issued January 26, 2006 


















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-05-00135-CV
__________
 
PRIMARY PLUMBING SERVICES, INC., Appellant
 
V.
 
CERTAIN UNDERWRITERS AT LLOYD’S LONDON, Appellee
 

 
 
On Appeal from the 157th District Court
Harris County, Texas
Trial Court Cause No. 2004-18761
 

 
 
MEMORANDUM OPINION
          We deny appellant’s motion for rehearing. Tex. R. App. P. 49.3. We withdraw
our November 17, 2005 opinion, substitute this opinion in its place, and vacate our
November 17, 2005 judgment. 
          Appellant, Primary Plumbing Services, Inc. (“PPS”), challenges the trial court’s
rendition of summary judgment in favor of appellee, Certain Underwriters at Lloyd’s
London (“Lloyd’s”), in Lloyd’s suit seeking a declaratory judgment that it did not
owe a duty to defend or a duty to indemnify PPS for claims arising out of PPS’s
alleged negligent installation of a lavatory. In its first three issues, PPS contends that
the trial court erred in granting Lloyd’s summary judgment motion on the grounds
that the underlying petition did not allege an “accident” within the policy’s coverage
and did allege an “expected or intended injury” or loss or damage “involving a
construction defect.” In its fourth and fifth issues, PPS contends that the trial court
erred in granting Lloyd’s summary judgment motion on the grounds that Lloyd’s did
not owe PPS a duty to indemnify because Lloyd’s did owe PPS a duty to defend and
that genuine issues of material fact existed as to Lloyd’s duty to defend. We affirm. 
Factual and Procedural Background
          Lloyd’s issued a commercial general liability insurance policy (the “Policy”)
to PPS. Under the terms of the Policy, Lloyd’s agreed to pay for any sums that PPS
became “legally obligated to pay as damages because of ‘bodily injury’ or ‘property
damage’ to which the insurance applies.” The Policy applied to bodily injury and
property damage only if the injury or damage was caused by an “occurrence” during
the policy period.


 The Policy defined occurrence to mean “an accident, including
continuous or repeated exposure to substantially the same general harmful
conditions.” The Policy excluded coverage for “‘bodily injury’ or ‘property damage’
expected or intended from the standpoint of the insured” or for “any claim for loss or
damage, including defense cost, involving construction defect(s) caused or
contributed by the insured, employees of the insured or subcontractors of the named
insured.” 
          The underlying lawsuit arose out of PPS’s installation of six lavatories in the
restrooms of Sam’s Irish Pub. PPS and Lloyd’s appear to agree that, although the
project specifications called for the lavatories to be installed on built-in counters, at
least one of the lavatories was installed as a “wall-hung” lavatory. On October 6,
2002, after PPS completed the installation of the lavatories, the wall-hung lavatory
fell and injured Ronna Pangarakis. Pangarakis filed suit against PPS, alleging that
she “was seriously and permanently injured as a result of the negligence of [PPS].” 
Specifically, Pangarakis alleged
          [PPS], in the course of its plumbing duties was to install a wall
hung lavatory on the premises. [PPS] did not install the wall hung
lavatory properly and as a result Ms. Pangarakis was injured. This
failure to follow proper plumbing practices in installing the lavatory
constitutes negligence.
 
Pangarakis made claims for medical expenses, physical pain and suffering, mental
anguish, disfigurement, impairment, lost wages, and lost earning capacity.
          Lloyd’s filed this action seeking a declaration that it did not owe a duty to
defend or a duty to indemnify PPS in the underlying lawsuit because the Policy did
not provide coverage for an “expected or intended injury.” Subsequently, Lloyd’s
filed its summary judgment motion, asserting that (1) there was not an “accident,” and
therefore not an “occurrence,” within the coverage of the Policy because PPS’s
installation of the lavatory was intentional and voluntary and because Pangarakis’s
injuries were a natural result of PPS’s intentional and voluntary conduct, (2) the
Policy did not provide coverage because Pangarakis’s injuries were “expected or
intended,” and (3) the Policy did not provide coverage because PPS’s installation of
the wall-hung lavatory constituted a “construction defect.” Lloyd’s further asserted
that it did not owe a duty to indemnify PPS in the underlying lawsuit because there
was no coverage for Pangarakis’s claims. 
          In its response, PPS asserted that the claims in the underlying lawsuit were
based in negligence, that Pangarakis did not allege intentional conduct, and that
whether Pangarakis’s injuries were “expected or intended” or caused by a
“construction defect” were questions for the trier of fact. The trial court granted
Lloyd’s summary judgment motion.
Standard of Review
          The well-settled standard of review for summary judgments applies to
insurance coverage disputes. State Farm Fire & Cas. Co. v. Vaughan, 968 S.W.2d
931, 933 (Tex. 1998). To prevail on a summary judgment motion, a movant has the
burden of proving that it is entitled to judgment as a matter of law and that there is no
genuine issue of material fact. Tex. R. Civ. P. 166a(c); Black v. Victoria Lloyds Ins.
Co., 797 S.W.2d 20, 23 (Tex. 1990); Farah v. Mafrige & Kormanik, P.C., 927
S.W.2d 663, 670 (Tex. App.—Houston [1st Dist.] 1996, no writ). We may affirm a
summary judgment only when the record shows that a movant has disproved at least
one element of each of the plaintiff’s claims or has established all of the elements of
an affirmative defense as to each claim. Farah, 927 S.W.2d at 670. When a summary
judgment does not specify the grounds on which the trial court granted it, the
reviewing court will affirm the judgment if any theory included in the motion is
meritorious. Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex.
1995); Summers v. Fort Crockett Hotel, Ltd., 902 S.W.2d 20, 25 (Tex.
App.—Houston [1st Dist.] 1995, writ denied). 
 
Duty to Defend
          In construing the terms of an insurance contract, we apply the same rules of
construction that we apply in interpreting any contract. Trinity Universal Ins. Co. v.
Cowan, 945 S.W.2d 819, 823 (Tex. 1997); Grain Dealers Mut. Ins. Co. v. McKee,
943 S.W.2d 455, 458 (Tex. 1997). We must strive to give effect to the written
expression of the parties’ intent. State Farm Life Ins. Co. v. Beaston, 907 S.W.2d
430, 433 (Tex. 1995). When the terms of a policy to be construed are unambiguous,
it is a court’s duty to enforce the policy according to its plain meaning. See Grain
Dealers Mut. Ins. Co., 943 S.W.2d at 458; Puckett v. U.S. Fire Ins. Co., 678 S.W.2d
936, 938 (Tex. 1984); Devoe v. Great Am. Ins., 50 S.W.3d 567, 571 (Tex.
App.—Austin 2001, no pet.). The fact that the parties disagree as to the extent of
coverage afforded under a policy does not create an ambiguity, McKee, 943 S.W.2d
at 458, and extrinsic evidence may not be considered for the purpose of creating an
ambiguity. Nat’l Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex.
1995). 
          If a petition does not allege facts within the scope of coverage of an insurance
policy, an insurer is not obligated to defend a suit against its insured. Am. Physicians
Ins. Exch. v. Garcia, 876 S.W.2d 842, 847–48 (Tex. 1994). Generally, the insurer
owes a duty to defend if there are allegations in the petition that potentially state a
cause of action within the coverage of the policy. Nat’l Union Fire Ins. Co. v.
Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997). In determining
whether an insurer has a duty to defend its insured, Texas courts apply the “eight
corners rule,” which compares the allegations in the petition to the terms of the
insurance policy. Nat’l Union, 939 S.W.2d at 141. We interpret the allegations
liberally in favor of the insured, and any doubt as to whether the insurer has a duty
to defend is resolved in favor of the insured. Id.; King v. Dallas Fire Ins. Co., 85
S.W.3d 185, 187 (Tex. 2002). “When an alleged contract ambiguity involves an
exclusionary provision of an insurance policy, then we ‘must adopt the construction
. . . urged by the insured as long as that construction is not unreasonable, even if the
construction urged by the insurer appears to be more reasonable or a more accurate
reflection of the parties’ intent.’” Balandran v. Safeco Ins. Co. of Am., 972 S.W.2d
738, 741 (Tex.1998) (quoting Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson
Energy Co., 811 S.W.2d 552, 555 (Tex.1991)). 
          A court should focus on the underlying facts alleged rather than the legal
theories asserted. Nat’l Union, 939 S.W.2d at 141. Furthermore, the allegations
should be considered without reference to their truth or falsity, to what the parties
know or believe to be true, or to a legal determination of those facts. See Argonaut
Southwest Ins. Co. v. Maupin, 500 S.W.2d 633, 635 (Tex. 1973); Heyden Newport
Chem. Corp. v. S. Gen. Ins. Co., 387 S.W.2d 22, 24 (Tex. 1965). A court may not
consider evidence extrinsic to the allegations when deciding whether the insurer owes
a duty to defend. Houston Petroleum Co. v. Highlands Ins. Co., 830 S.W.2d 153, 155
(Tex. App.—Houston [1st Dist.] 1990, writ denied). Neither facts ascertained before
suit or in the process of litigation nor the ultimate outcome of the suit affects the duty
to defend. Butler & Binion v. Hartford Lloyd’s Ins. Co., 957 S.W.2d 566, 568 (Tex.
App.—Houston [14th Dist.] 1995, writ denied). Finally, a court may not read facts
into the pleadings, look outside the pleadings, or imagine factual scenarios that might
trigger coverage. Gehan Homes, Ltd. v. Employers Mut. Cas. Co., 146 S.W.3d 833,
838 (Tex. App.—Dallas 2004, pet. filed) (citing Nat’l Union, 939 S.W.2d at 142)).
          In its third issue, PPS contends that the trial court erred in granting Lloyd’s
summary judgment motion on the grounds that Pangarakis’s petition alleged a loss
or damage involving a construction defect. PPS argues that the construction defect
exclusion did not apply because Pangarakis’s claims are for bodily injury and not for
a construction defect, “the pleadings do not claim that the improper installation is a
construction defect,” and “an installation has nothing to do with a construction.” PPS
further asserts that characterizing the installation of a plumbing fixture as a
construction defect would render the Policy illusory because it would negate coverage
“for most of the work done by [PPS].” PPS also asserts that the construction defect
exclusion applies only to contract claims and that applying the exclusion to the
underlying claims would render the other exclusions in the Policy that apply to bodily
injury or property damage surplusage.



          First, we note that PPS’s and Lloyd’s disagreement as to the meaning of the
construction defect exclusion does not in itself create an ambiguity. Mckee, 943
S.W.2d at 958. Rather, we look to the terms of the Policy as the written expression
of the parties’ intent. Beaston, 907 S.W.2d at 433. The Policy provides that coverage
is excluded for “any claim for loss or damage, including defense cost, involving
construction defect(s) caused or contributed by the insured, employees of the insured
or subcontractors of the named insured.” (Emphasis added.) 
          Pangarakis alleged that she was injured as a result of PPS’s negligence in
installing a lavatory. The construction defect exclusion contains no language limiting
its application to certain types of claims, i.e. contract claims, or certain types of
damages, i.e. property damage. Rather, the exclusion broadly applies to “any claim
for loss or damage.” Thus, Pangarakis’s claim seeking recovery for bodily injury
allegedly caused by PPS’s negligent installation is a claim for “damage” to which the
exclusion applies. PPS’s argument that the exclusion does not apply because
“installation has nothing to do with construction” necessarily fails. The Policy
provides no definition for the term “construction defect,”


 and we must give the term
its plain meaning. Tumlinson v. St. Paul Ins. Co., 786 S.W.2d 406, 408 (Tex.
App.—Houston [1st Dist.] 1990, writ denied).


 “Construction” is defined as “the act
of constructing.” The [Compact] Oxford English Dictionary 322 (2d ed. 1993). 
 “Construct” is defined as “make by fitting parts together; build, erect.” Id. While
Pangarakis’s petition alleges negligence in regard to PPS’s installation


 of the
lavatory, Pangarakis’s use of the word “installation” is not so restrictive as to except
her claims from the application of the construction defect exclusion. Regardless of
the specific word used by Pangarakis, the factual allegations in her petition establish
that she is essentially alleging that PPS negligently constructed, built, or assembled
the lavatory in question. By including within the Policy a construction defect
exclusion, which by its terms applies to any claim for loss or damage involving a
construction defect caused by the insured, the insured’s employees, or the insured’s
subcontractors, the parties intended to exclude from coverage any claims for loss or
damage arising out of PPS’s construction, assembly, or installation of plumbing
fixtures. There is nothing in the construction defect exclusion suggesting that the
exclusion does not apply to a claim for bodily injury as a result of PPS’s negligent or
substandard “installation” of a lavatory.


 While we recognize that we must adopt the
construction urged by the insured as long as that construction is not unreasonable, we
conclude that the the construction proffered by PPS is unreasonable.
          We hold, as a matter of law, that Pangarakis’s alleged injuries constitute a loss
or damage involving a construction defect caused or contributed by PPS or its
employees and that, consequently, the construction defect exclusion unambiguously
applies to the underlying claims. Accordingly, we further hold that the trial court did
not err in granting Lloyd’s summary judgment motion on the grounds that Lloyd’s did
not owe PPS a duty to defend. See Clemons v. State Farm Fire & Cas. Co., 879
S.W.2d 385, 391 (Tex. App.—Houston [14th Dist.] 1994, no writ) (“if the petition
only alleges facts excluded by the policy, then the insurer is not required to defend”).



          We overrule PPS’s third issue.
Duty to Indemnify
          In its fourth and fifth issues, PPS argues that the trial court erred in granting
Lloyd’s summary judgment motion on the grounds that it did not owe a duty to
indemnify PPS because the trial court’s ruling that there was no duty to indemnify
was premature and that genuine issues of material fact existed as to Lloyd’s duty to
indemnify.
           A duty to indemnify is separate and distinct from a duty to defend. Archon
Invs., Inc. v. Great Am. Lloyds Ins. Co., No. 01-03-01299-CV, 2005 WL 2037177, at
*4 (Tex. App.—Houston [1st Dist.] Aug. 25, 2005, no pet.) (citing Great Am. Ins. Co.
v. Calli Homes, 236 F. Supp. 2d 693, 697 (S.D. Tex. 2002)). The duty to indemnify
is not based on the pleadings, but on the facts that establish liability. Id. The duty
arises only after the insured has been adjudicated legally responsible for damages in
a lawsuit by judgment or settlement. Id.; see also Hartrick v. Great Am. Lloyds Ins.
Co., 62 S.W.3d 270, 275 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (noting that
duty to indemnify arises from proven, adjudicated facts). When a court determines
that there is a duty to defend, a ruling on the duty to indemnify is premature. Gehan
Homes, Ltd., 146 S.W.3d at 846. However, the duty to indemnify is justiciable
before the insured’s liability is determined when the insurer has no duty to defend and
the same reasons that negate the duty to defend likewise negate any possibility the
insurer will ever have a duty to indemnify. Farmers Tex. County Mut. Ins. Co. v.
Griffin, 955 S.W.2d 81, 84 (Tex. 1997). If a court determines an insurer has no duty
to defend, then the insurer has no duty to indemnify. Archon Invs., Inc., 2005 WL
2037177, at *4. 
          Having held that Lloyd’s did not owe PPS a duty to defend PPS in the
underlying lawsuit, and because the same reasons that negate Lloyd’s duty to defend
likewise negate any possibility that Lloyd’s will ever have a duty to indemnify PPS
for the underlying claims, we further hold that the trial court did not err in granting
Lloyd’s summary judgment motion on the grounds that it did not owe PPS a duty to
indemnify.
          We overrule PPS’s fourth and fifth issues.
Conclusion
          Having held that the trial court did not err in granting Lloyd’s summary
judgment motion on the grounds that it did not owe a duty to defend or a duty to
indemnify PPS from the underlying claims because the construction defect exclusion
unambiguously applies to the underlying claims, we need not address PPS’s first and
second issues. 
          We affirm the judgment of the trial court.
 
                                                                        Terry Jennings
                                                                        Justice
 
Panel consists of Justices Nuchia, Jennings, and Higley.